UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------ X
Louis Lamphear

                               Plaintiff,             **MEMORANDUM RULING**

          -against-                         Case No. 09-1640 (TLM)

John Potter, Postmaster General,
United States Postal Service

                              Defendant,
------------------------------------------------------------ X

       Before the Court is defendant John Potter's, Postmaster General of the United States Postal Service, Motion for Summary Judgment [Rec. Doc. 48], plaintiff Louis Lamphear's Memorandum in Opposition thereto [Rec. Doc. 51], defendant's Reply Memorandum [Rec. Doc. 53] in further support of his summary judgment motion, defendant's Memorandum in Opposition to plaintiff's embedded Motion to Amend his complaint [Rec. Doc. 52], and plaintiff's Reply memorandum in further support of his Motion to Amend [Rec. Doc. 54].  For the reasons that follow, plaintiff's motion to amend will be DENIED and defendant's motion for summary judgment will be GRANTED.

       Plaintiff's Amended Complaint alleges that defendant, through his agents, servants and/or employees discriminated against him on the basis of a perceived mental disability, retaliated against him for filing  a Equal Employment Opportunity ("EEO") complaint, created a hostile work environment, and intentionally caused him severe emotional distress. Plaintiff brings claims under the Americans with Disabilities Act ("ADA"), Title VII, and Connecticut State law.

**I. Background**
       Plaintiff, Louis Lamphear, is a maintenance department worker with the United States Postal Service ("USPS") at the Hartford Processing and Distribution Center. Am. Compl. at ¶ 5. Plaintiff

asserts that he was subjected to ongoing harassment, disparate treatment, and a hostile work environment based on a perceived mental disability and in retaliation for filing an EEO complaint. *Id.* On July 17, 2008, in response to complaints about plaintiff from seven managers and co-workers, plaintiff was called into a private meeting with a manager, David Letourneau. *Id.* at ¶¶6-7. Plaintiff asserts that he was subjected to discrimination as the manager required him to attend a Employee Assistance Program ("EAP") due to a perceived mental condition. *Id.* Furthermore, plaintiff asserts he was discriminated against when management demoted him from a Level 9 to a Level 7 employee after he failed a required promotional exam. *Id.* at ¶ 11; Def. Ex. 4: Student Failure or Early Withdrawal Form. Plaintiff concedes that he failed the promotional exam but asserts that at least two other employees failed the exam but were allowed to remain at Level 9 positions. Am. Compl. at ¶ 11; Def. Ex. 4.

Plaintiff filed an EEO complaint on or about December 22, 2008. Am. Compl. at ¶18. On January 8 and June 21, 2009, plaintiff and co-worker Mike Ward had physical altercations relating to their shared workstation. Pl. Opp. at 15 [Rec. Doc. 51]. After management investigated the incidents, supervisors instructed both plaintiff and Ward that physical contact and invasion of personal space was not acceptable and that work area access was restricted to duty hours. Def. Ex. 19: Foley Letter. Also, the manager of the maintenance department sent out a directive to all employees that access to the shared area was restricted to one's work hours. Def. Ex. 18: Manager Directive. Furthermore, on April 22, 2009, plaintiff alleges that co-worker Ron Pelletier refused to sell him a t-shirt in direct retaliation for filing an EEO complaint. Pl. Opp. at 15 [Rec. Doc. 15]. Plaintiff filed a complaint with the Hartford Post Office Veteran's Committee, and ultimately purchased a shirt. Pl. Ex. G: Lamphear Letter; Pl. Ex. B: Lamphear Aff. at ¶ 10.  Lastly, on

September 14 and October 4, 2009, plaintiff's toolbox was spray-painted gray and his nameplate for his locker was covered with black marker, respectively. Management investigated the vandalism but the culprit was never identified. Def. Ex. 23: Sullivan Dep. at 92: 1-3; Def. Ex. 6: Foley Dep. at 83-84.

On November 12, 2009, plaintiff filed an Amended Complaint [Rec. Doc. 5], which asserts the following causes of action: 1) violation of the ADA; 2) retaliation under Title VII; 3) hostile work environment under Title VII; and 4) intentional infliction of emotional distress under Connecticut State law. Defendant moves for summary judgment on all of plaintiff's causes of action [Rec. Doc. 48].

## II.    Summary Judgment Standard

Summary judgment is appropriate only when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Such a determination is to be made "after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor."  *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact.  When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the nonmoving party has the burden of proof at trial, the moving party must satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim, and if

the moving party succeeds the burden shifts to the non-moving party to show that there is a genuine issue for trial.  *Id.* at 322-23.

Once the burden shifts to the non-moving party, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial.  *Id.* at 324.  The non-moving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If no issue of fact is presented and if the movant is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

**III. Discussion**

**1. ADA Claim**

*A. Merits*

A civil action pursuant to the ADA cannot be maintained against the Postmaster General in his capacity as an employer. The ADA provides: "The term 'employer' does not include . . . the United States . . . " 42 U.S.C. § 12111(5)(B)(I). Thus, the ADA specifically excludes the federal government, including the USPS, in its capacity as employer, from its coverage. *Sarvis v. U.S.,* 2000 U.S. App. LEXIS 26618, *5-6 (2d Cir. Oct. 19, 2000)*; Ziemba v. Slater*, 36 F. Supp. 2d 81, 86 (D.

Conn. 1999); *see Collins v. Soveriegn Bank*, 482 F. Supp. 2d 235, 239 (D. Conn. 2007). As an ADA action cannot be maintained against the defendant, the plaintiff fails to state a claim upon which relief can be granted. Accordingly, defendant's motion for summary judgment on plaintiff's ADA claim will be granted.

*B. Motion to Amend Complaint to replace ADA claim with a Rehabilitation Act claim*

In plaintiff's memorandum of law in opposition to defendant's motion for summary judgment, plaintiff moves, for the first time, to amend his complaint "in order to supplement it with a §504 [Rehabilitation Act] claim" in place of his ADA claim. Pl. Opp. at 5 [Rec. Doc. 51]. Plaintiff seeks permission to "replace one claim with another" in response to defendant's argument that the ADA does not apply to defendant as a federal employer. Pl. Reply at 3 [Rec. Doc. 54]. Plaintiff asserts that he has alleged acts by the defendant to support a claim under Section 504 of the Rehabilitation Act of 1973. Pl. Opp. at 3 [Rec. Doc. 51]. Plaintiff failed to amend his complaint by the January 4, 2010 deadline to amend the pleadings set by the Court [Rec. Doc. 9], which was agreed to by the parties' in their joint Rule 26(f) report [Rec. Doc. 8].

After a scheduling report has been filed and the deadline to amend the pleadings has passed, the Second Circuit has required that the moving party demonstrate "good cause" to amend a pleading. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Good cause depends on the diligence of the moving party. *Id.* Generally, "a district court has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).

Based on the procedural history of this proceeding as set out hereinafter, the Court finds that plaintiff has not demonstrated good cause to amend his complaint at this late juncture. Plaintiff filed

5

his original complaint [Rec. Doc. 1] on October 14, 2009, which included a Rehabilitation Act claim. On November 12, 2009, plaintiff filed an amended complaint [Rec. Doc. 5], which dropped his Rehabilitation Act claim. On August 12, 2011, defendant filed a motion for judgment on the pleadings [Rec. Doc. 28], asserting, *inter alia*, that the ADA does not apply to defendant as a matter of law since he was a federal employer.  At this point, plaintiff did not seek to amend his complaint to add a Rehabilitation Claim although he was alerted to his ADA claim's inadequacies. Instead, plaintiff admitted "that the ADA carved out certain exceptions to liability and the defendant does in fact fall within the same" and simply sought to amend his complaint to take the factual allegations in the ADA claim and explicitly plead them in his Title VII claim instead.[1] Pl. Opp. Mem. at 4-5 [Rec. Doc. 32]. Plaintiff did not attempt to amend his complaint by adding a Rehabilitation Act claim until May 9, 2012. Pl. Opp. at 3-11 [Rec. Doc. 51].

Specifically, the Court finds that plaintiff was not diligent. First, plaintiff delayed seeking to amend his complaint until after discovery had been completed and while a summary judgment motion was pending. *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (finding that a district court did not abuse its discretion in denying party's motion to amend after discovery had been completed and a summary judgment was pending). Plaintiff missed the deadline set by the Court to amend the complaint by more than two years. Moreover, the procedural history of this case clearly establishes that plaintiff's attorney was aware of the deficiency in his ADA claim *at least* nine months prior to seeking to amend the complaint.[2]  Plaintiff does not offer any explanation for

---

[1]The Court denied defendant's motion for judgment on the pleadings pro forma and granted the defendant leave to file a motion for summary judgment [Rec. Doc. 46].

[2]Plaintiff's attorneys, Martyn Philbot and Jeffrey Schuyler, encountered the same circumstances regarding a deficient ADA claim against the United States Postal Service in two cases prior to the filing of this case. *Moore v. Potter*, 07-cv-108 (RNC) (D. Conn. May 23, 2008); *Mann v. Donahoe*, 10-cv-330

his failure to timely file an amendment. Thus, plaintiff fails to demonstrate good cause to amend his pleadings at this late juncture. *Parker*, 204 F.3d at 339.

Assuming, *arguendo,* that plaintiff's motion to amend had been filed timely, it still must fail and thus to allow the amendment would be futile as plaintiff has not asserted sufficient facts to support a Rehabilitation Act claim. Plaintiff asserts that defendant violated the Rehabilitation Act by referring him to a Employee Assistance Program ("EAP"). However, a referral to EAP counseling is not a materially adverse or adverse action. *Eustace v. S. Buffalo Mercy Hosp.*, 36 Fed. Appx. 673, 675 (2d Cir. 2002) (noting that defendant could mandate the plaintiff to attend a EAP counseling session without running afoul of the ADA).[3]

Plaintiff also asserts that defendant violated the Rehabilitation Act by demoting him from a Level 9 to a Level 7 position after plaintiff failed a required promotional test. Lamphear Aff. at 7. Section 504 of the Rehabilitation Act provides in relevant part that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [his] disability . . . be subjected to any discrimination under any program or activity conducted by any program or activity receiving Federal assistance." 29 U.S.C. § 794(a); *Benoit v. State DMV*, 2012 U.S. Dist. LEXIS 2011 (D. Conn. Jan. 6, 2012); see  *D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998). The requirement that a plaintiff be "otherwise qualified" for the benefit which he alleges to have been denied means that the plaintiff is "a person who is qualified in spite of his handicap." *Bolmer v. Oliveira*, 570 F. Supp. 2d 301 (D. Conn. 2008) (quoting *Doe v. New York Univ.*, 666 F.2d 761, 775 (2d Cir. 1981)); *Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir. 1991).

---

(JCH) (D. Conn. June 30, 2011).

[3]An analysis of a claim under ADA is the same as the analysis of a claim under the Rehabilitation Act. *Fulton v. Goord*, 591 F.3d 37, 42 n.1 (2d Cir. 2009).

Plaintiff concedes that he failed the necessary promotional test to become a Level 9 Building Equipment Mechanic. Am. Compl. at ¶¶ 10-11; Pl. Ex. B: EEO Compl. at 13; Lamphear Aff. at ¶7. Thus, plaintiff was not "otherwise qualified" for the Level 9 position. *See Brief v. Albert Einstein College of Med.*, 423 Fed. Appx. 88, 91-92 (2d Cir. 2011) (finding a school did not violate the Rehabilitation Act when it dismissed a disabled student who failed required examinations). Moreover, in plaintiff's EEO complaint, plaintiff asserted that he was reinstated to a "temporary" Level 9 position a month after the failed examination. Pl. Ex. A: EEO Compl. at 13. In fact, plaintiff was promoted to a Level 9 Building Equipment Mechanic once he passed the promotional test, which leads to the unalterable conclusion that his failed test led to his Level 7 assignment rather than any discrimination due to a perceived disability. Pl. Ex. C: Foley Dep. at 63:20-25. Plaintiff therefore fails to assert sufficient facts to support a Rehabilitation Act claim.

Accordingly, plaintiff motion to amend his complaint will be denied.

**2. Retaliation**

*A. Legal Standard*

Retaliation claims under Title VII are evaluated using the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff bears the burden of establishing a prima facie case of retaliation. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir.2004). If a plaintiff meets his burden in establishing a prima facie case, the defendant-employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must then provide evidence that the employer's explanation is not true, but rather a pretext for discrimination. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

8

To establish a prima facie case of retaliation, a plaintiff must "adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected [activity], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006) (quotations and alterations omitted).

In the case at bar, it is undisputed that plaintiff filed an EEO complaint on December 22, 2008 alleging discrimination based upon a perceived mental illness, which is a protected activity, and that the employer was aware of this activity. Def. Ex. 15; Pl. Ex. A.

To meet the third element, that he suffered an adverse employment action, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). Minor changes in schedules are not considered adverse employment acts, nor are general personality disputes. *Recio v. Creighton Univ.*, 521 F.3d 934, 940 (8th Cir. 2008).

To meet the fourth element, a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001). A court may exercise its judgment about

the permissible inferences that can be drawn from temporal proximity in the context of particular cases. *Espinal*, 558 F.3d at 129.

### B. Alleged Adverse Acts

Plaintiff alleges that the defendant, through his agents and/or employees, engaged in five adverse actions against him. The Court will address each in turn.

### i.    The Altercations with Mike Ward

On January 8 and June 21, 2009, plaintiff and Mike Ward had physical altercations. Specifically, on January 8, 2009, Ward forcibly removed plaintiff from a shared workstation after plaintiff occupied the workstation prior to the start of his shift. Pl. Ex. F: Lamphear Letter.  Ward asserts that he removed plaintiff because he remained at the workstation after Ward warned him that he was still in charge of the workstation and needed to use it. Def. Ex. 17: Ward Letter. Plaintiff admits that he regularly occupied the workstation prior to the start of his shifts for ten months prior to the incident. Pl. Ex. F: Lamphear Letter.  Plaintiff speculates that Ward acted with retaliatory animus due to "the immediacy of the event following [his] EEO complaint"and the fact that he had no altercations in the previous ten months. Lamphear Aff. at ¶9. On June 21, 2009, Ward ripped plaintiff's hat and book from his hands, threw them into the trash and then made a derogatory comment directly at plaintiff. *Id.* at ¶11; Pl. Ex. H: Lamphear Letter. Plaintiff alleges that Ward acted in order to instigate a fight. Pl. Ex. H. After management conducted an investigation of the incidents, supervisors instructed both plaintiff and Ward that physical contact and invasion of personal space was not acceptable and that work area access was restricted to duty hours. Def. Ex. 19: Foley Letter. Furthermore, the manager of the maintenance department sent out a directive to all employees stating that access to the shop area was restricted to one's work hours and ordered

10

supervisors to enforce the directive. Def. Ex. 18: Manager Directive; Def. Ex. 22 Foley Email.

The Court finds that a reasonable employee would not have found the challenged actions materially adverse because minor changes in schedules are not considered adverse employment acts, nor are general personality disputes. *Recio*, 521 F.3d at 940. Plaintiff was simply instructed to refrain from entering the work area until his scheduled shift. Moreover, the Court concludes that the two altercations with Mike Ward are not retaliatory adverse actions. The record before the Court indicates that Ward acted because plaintiff occupied his workstation and to instigate a fight, not to retaliate for plaintiff filing an EEO complaint. *See Mills v. S. Conn. State. Univ.,* 2011 U.S. Dist. LEXIS 88384, *33-36 (D. Conn. Aug. 10, 2011) (finding that door slamming, desk slapping and other angry behavior is not actionable in absence of any prohibited motivation); *Baptiste v. Cushman & Wakefield*, 2007 U.S. Dist LEXIS 19784, *27-28 (S.D.N.Y. Mar. 7, 2007) ("personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable"). The incidents with Mike Ward do no support a retaliation claim.

ii.    Denied ability to purchase Veteran's Committee shirt by Pelletier

On April 22, 2009, plaintiff alleges that co-worker Ron Pelletier refused to sell him a Veteran's Committee shirt "in direct retaliation" for filing an EEO complaint. Lamphear Aff. at ¶ 10; Pl. Ex. G: Lamphear Letter. The record fails to establish that a reasonable employee would have found the challenged action materially adverse or that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington,* 548 U.S. at 68. The record establishes that plaintiff filed a complaint with the Hartford Post Office Veteran's Committee calling Pelletier's actions "harassing and discriminating" and was permitted to purchase a shirt. Pl. Ex. G; Lamphear Aff. at ¶10; Pl. Rule 56(a)(2) Stmt. at ¶17. The Court finds that Pelletier's actions would

11

not have dissuaded a reasonable worker from making a charge of discrimination and cannot support

a retaliation claim.

    iii.    Anonymous vandalism of plaintiff's toolbox and locker

Plaintiff alleges that the nameplate on his toolbox was spray painted grey, and his nameplate

on his locker was covered with black marker on September 14 and October 4, 2009, respectively.

Lamphear Aff. at ¶¶11-12; Pl. Ex. I, J: Lamphear Letters. Management investigated the vandalism

but the culprit was never identified. Def. Ex. 23: Sullivan Dep. at 92: 1-3; Def. Ex. 6: Foley Dep.

at 83-84. Plaintiff supports his claim that the anonymous acts of vandalism were adverse actions

with the following conclusory sentence: "It is my firm belief that this action was taken in direct

retaliation for my exercising my rights and filing an EEO complaint." Lamphear Aff. at ¶12. Such

conclusory statements are insufficient to maintain a claim for retaliation. *Spector v. Bd. of Trs.*, 316

Fed. Appx. 18, 21 (2d Cir. 2009) (finding that alleged incidents of retaliation are not materially

adverse where "plaintiffs offer only conclusory allegations of retaliatory motive"). Furthermore, an

"employee's decision to report discriminatory behavior cannot immunize that employee from those

petty slights or minor annoyances that often take place at work and that all employees experience."

*Burlington*, 548 U.S. at 68; *Baptiste*, 2007 U.S. Dist LEXIS 19784 at *27-28. Likewise, "Title VII

does not set forth a general civility code for the American workplace." *Id.*

Lastly, plaintiff asserts that the temporal proximity between plaintiff filing his EEO

complaint and the vandalism, nine to ten months, supports finding of causal connection between the

protected activity and the adverse action. Based on the record, the Court finds that the temporal

proximity in this case, without any other evidence of a causal connection even assuming the alleged

incidents otherwise support a claim for retaliation, is too attenuated in time to maintain a claim for

retaliation. *C.f. Espinal*, 558 F.3d at 129 (noting that a lapse of eight months is the longest time frame where a Court has found a causal connection between an EEO complaint and a retaliatory act).

As none of the acts asserted by plaintiff support a claim for retaliation under Title VII, defendant's motion for summary judgment on plaintiff's retaliation claim will be granted.

### 3. Hostile Work Environment

To survive a motion for summary judgment on a hostile work environment claim, plaintiff must demonstrate: (1) that the workplace was permeated with discriminatory intimidation due to his membership in a protected class that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Carter v. New Venture Gear, Inc.*, 310 Fed. Appx. 454, 457-58 (2d Cir. 2009) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003)); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

The first element involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive. *Harris*, 510 U.S. at 21-22. Whether a reasonable person would find a given work environment to be hostile depends on the totality of the circumstances, including: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance. *Kaytir v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010).

Plaintiff asserts that two unpleasant encounters with Mike Ward, a denial of his request to buy a shirt, and two anonymous acts of vandalism upon his property constitute a hostile work

environment.[4] Pl. Opp. at 19. There is no evidence, beyond mere conclusory statements, that the incidents occurred due to plaintiff's membership in a protected class; as someone perceived to have a mental disability. *Carter*, 310 Fed. Appx at 458 (denying hostile work environment claim where evidence lacked objective proof, beyond conclusory statements, of a connection between the alleged incidents and plaintiff's membership in a protected-class). Moreover, this is not the kind of frequent, severe, physically intimidating and work-related treatment that qualifies as a hostile work environment under Title VII. E.g., *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, off-hand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."*); Quinn v. GreenTree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) ("As a general matter, isolated remarks or occasional episodes of harassment will not merit relief under Title VII.")

As to the second element, the Supreme Court has ruled that employers are not automatically liable for harassment perpetrated by their employees. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). "Where an employee is the victim of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Petrosino v. Bell Atl.*, 385 F.3d at 223 (citing *Faragher,* U.S. at 789 and *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000)).

In this case, each incident was committed by a non-supervisory co-worker and plaintiff's employer took appropriate remedial action after each incident.  After the incidents with Mike Ward,

---

[4] The incidents are discussed in more detail in Section 2(B) of this Ruling.

a manager sent out a directive to all employees that access to the shop area is restricted to one's work hours. Def. Ex. 18. Moreover, manager Mike Sullivan had discussions with Ward on how to interact with people and how to ensure his behavior remained appropriate. Pl. Rule 56(a)(2) Stmt at ¶15. Furthermore, it is undisputed that the Hartford Post Office Veteran's Committee ultimately permitted plaintiff to purchase a t-shirt after he was initially denied the opportunity. Lamphear Aff. at ¶10.  Lastly, to remedy against vandalism towards plaintiff, managers investigated the incidents, and conducted a department-wide talk cautioning employees against such activity. Def. Ex. 6: Foley Dep. at 86; Def. Ex 23: Sullivan Dep. at 71; Def. Ex. 26: Email dated Sept. 23, 2009 with attached service talk.

Plaintiff has not alleged sufficient facts to maintain a hostile work environment claim and defendant's motion for summary judgment on plaintiff's hostile work environment claim will therefore be granted.

### 4. Intentional Infliction of Emotional Distress

The Federal Tort Claims Act ("FTCA") allows tort actions to be brought against the United States in District Court under limited circumstances. See 28 U.S.C. § 2671. Among its several terms, the FTCA bars any tort claim from federal court "unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing." *Millares Guiraledes de Tineo v. United States*, 137 F.3d 715, 719-20 (2d Cir. 1998) (citing 28 U.S.C. §2675(a)). This condition "must be satisfied for a court to exercise jurisdiction." *Adelek v. United States*, 355 F.3d 144, 153 (2d Cir. 2004); *Sarvis v. United States*, 2000 U.S. App. LEXIS 26618, *10 (2d Cir. Oct. 19, 2000).[5]

---

[5]Plaintiff's contention that the Court can address claims that are "reasonably related" to those asserted in his EEO complaint is totally with merit.  An EEO complaint is not an FTCA complaint. Even

Plaintiff has never initiated the administrative tort claims process with respect to this or any other tort claim against USPS. Def. Ex. 1: Decl. Of Kimberly Herbst. Accordingly, any tort claim by plaintiff against defendant must be dismissed for lack of subject matter jurisdiction. Thus, defendant's motion for summary judgment on plaintiff's intentional infliction of emotional distress claim will be granted.

### IV. Conclusion

Plaintiff's motion to amend the complaint [Rec. Doc. 51] will be DENIED. Defendant's motion for summary judgment [Rec. Doc. 48] will be GRANTED. Accordingly, plaintiff's ADA, Retaliation, Hostile Work Environment, and Intentional Infliction of Emotional Distress claims will be dismissed with prejudice.

While the Court has no doubt that Mr. Lamphear felt aggrieved by the incidents described in his complaint, the Court finds that as a matter of law each of the claims presented on his behalf by his attorneys Martyn Philpot and Jeffrey Schulyer to be frivolous and that attorneys Philpot and Schulyer knew or should have known at the time of filing plaintiff's complaint, amended complaint, and attempted amended complaint that the claims were frivolous. Significant tax payer funds and limited judicial resources had to be expended to dispose of the claims. As a result of the Court's finding, an award of attorney's fees would be appropriate and would be awarded if defendant had not been a quasi-government agency subject to the limitation on attorney's fees set forth in 42 U.S.C. § 2000E-5(k). However, other appropriate sanctions are available to the Court under its inherent power, under Rule 11 of Federal Rules of Civil Procedure, and under 28 U.S.C. § 1927. The Court will forbear imposing such a sanction in this case. In the light most favorable to attorney

---

assuming, *arguendo*, that an EEO complaint constitutes a FTCA complaint, plaintiff's claim must still fail because he did not specify the amount of the tort claim in his EEO complaint. *Pl. Ex. A: EEO Compl.*

16

Philpot and Schulyer, there was not a thorough investigation of the facts of the case or research of the law applicable thereto. The Court reminds attorneys Philpot and Schulyer that lawyers are special people in the fabric of our society. Lawyers can do things that no others can, among them, file a lawsuit on behalf of another person not knowledgeable in the law. With that power comes responsibility as power without responsibility, at a minimum, brings disrespect to the legal system and at a maximum risks chaos.

**SO ORDERED.**

Tucker L. Melançon
United States District Judge

July 25, 2012
Bridgeport, NY